IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE<br>    and<br>MAINE DEPARTMENT OF<br>ENVIRONMENTAL PROTECTION, an<br>agency of the State of Maine, with its<br>principal offices located in the City of<br>Augusta, County of Kennebec,<br>State of Maine,<br><br>            Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA<br>    and<br>UNITED STATES DEPARTMENT OF<br>DEFENSE, an agency of the United States,<br>with a principal office located in<br>Washington, D.C.,<br><br>            Defendants. | CIVIL ACTION NO. 06-1-B-W |

## CONSENT DECREE

This Consent Decree is made, as of the Effective Date (as defined in Paragraph 2, below), between Plaintiffs State of Maine and the State of Maine Department of Environmental Protection (collectively hereinafter "Plaintiffs") and Defendants United States of America and United States Department of Defense (collectively hereinafter "United States"). (Plaintiffs and the United States are referred to collectively hereinafter as the "Parties.")

WHEREAS, this case involves claims by Plaintiffs under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-75, as amended

by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) (hereinafter "CERCLA"), seeking to recover certain costs that Plaintiffs have incurred in performing the Removal Action, as defined herein, in response to the release or threatened release of hazardous substances at the Residential Property, as defined herein.

WHEREAS, this case also includes claims by Plaintiffs seeking a declaration as to the United States' liability for costs to be incurred by the Plaintiffs in the future in performing and completing the Remedial Investigation and Feasibility Study in response to the release or threatened release of hazardous substances at or from four individual parcels of land -- the Original Smith Junkyard, the North Annex to the Smith Junkyard, the West Annex to the Smith Junkyard, and the Homestead Site -- which are located in Meddybemps and Cooper, Washington County, Maine, and referred to collectively hereinafter as the "Site."

WHEREAS, this case does not include or involve claims for the recovery of certain costs incurred by Plaintiffs as a result of Plaintiffs' performance of a removal action at the Site; those claims were resolved in a consent decree that was approved and entered by this Court on April 4, 2003, in an action styled <u>State of Maine v. United States</u>, Civil Action Number 03-50-B-H (D. Me.).

WHEREAS, the Parties desire to enter into this Decree to have a resolution of all claims that were, could now be or hereafter have been asserted against the United States in connection with the Remedial Investigation and Feasibility Study at the Site, as well as such claims in connection with the Removal Action at the Residential Property, and to avoid the complication and expense of further litigation of such claims concerning the Site and the Residential Property.

WHEREAS, the Parties agree that this Decree is fair, reasonable and in the public interest.

WHEREAS, the United States enters into this Decree as a settlement of all claims in connection with the Remedial Investigation and Feasibility Study at the Site and the Removal Action at the Residential Property, and does not admit any issue of fact or law arising from occurrences or transactions pertaining to the Site or the Residential Property.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:

1. <u>Parties Bound</u>. The Parties to this Decree are Plaintiffs and the United States. This Decree applies to, is binding upon, and inures to the benefit of Plaintiffs (and their successors, assigns, and designees) and the United States. This Decree does not extend to or inure to the benefit of any other party, person, or entity other than the Parties hereto.

2. <u>Effective Date</u>. The Effective Date of this Decree shall be the date this Decree is entered by the Court.

3. <u>Definitions</u>. Unless specifically defined below, the terms used in this Consent Decree which are defined in CERCLA or its implementing regulations shall have the meaning assigned to them in CERCLA or its implementing regulations as of the Effective Date. Whenever the terms listed below are used in this Decree, the following definitions shall apply:

    a. "Consent Decree" or "Decree" shall mean this consent decree;

    b. "Covered Matters" means: (1) any and all past or future claims that were, could now be or hereafter have been asserted by Plaintiffs against the United States for RI/FS Costs or for performance of the Remedial Investigation and Feasibility Study at the Site; and (2) any and all past or future claims that were, could now be or hereafter have been asserted by the Plaintiffs against the United States for the performance of the Removal Action at the Residential Property, or for costs incurred as a result of performing the Removal Action at the

Residential Property. "Covered Matters" does not include claims for Future Response Costs or any other claim or cause of action reserved by the Plaintiffs in Paragraph 6 of this Decree.

  c. "Day" shall mean a calendar day. In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next day which is not a Saturday, Sunday, or Federal holiday;

  d. "Feasibility Study" or "FS" means a study undertaken by the lead agency (in this case, the Plaintiffs) to develop and evaluate options for remedial action. The FS emphasizes data analysis and is generally performed in an interactive fashion with the Remedial Investigation or RI, using data gathered during the RI. The data gathered during the RI are used to define the objectives of the response action, to develop remedial action alternatives, and to undertake an initial screening and detailed analysis of the alternatives. "Feasibility Study" or "FS" also refers to a report that describes the results of a study undertaken by the lead agency (in this case, the Plaintiffs) to develop and evaluate options for remedial action. The FS for the Site is more particularly described in the Scope of Work that is attached hereto as Exhibit A.

  e. "Future Response Costs" means those costs, exclusive of RI/FS Costs, not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) (hereinafter "NCP"), to be incurred by Plaintiffs after the Effective Date of this Consent Decree in completing the response action at the Site or the response action at the Residential Property pursuant to 40 C.F.R. § 300.415.

  f. "Homestead Site" means the parcel of land, including the residential property, which is located in the Town of Meddybemps, Washington County, Maine, on the north side of Route 214, approximately one mile east of the intersection of Routes 214 and 191

near the Meddybemps/Charlotte town line, and identified on Map 2, Lot 7 on the Town of Meddybemps property maps, as well as in the warranty deed to Harry Smith, Jr. as filed in the Washington County (Maine) Registry of Deeds at Book 4048, Page 138.

   g. "North Annex to the Smith Junkyard" means the parcel of land, approximately 150 acres in extent, in the Town of Meddybemps, Washington County, Maine, and located immediately across State Route 191 from the Original Smith Junkyard, and identified as the property of Ms. Dawn K. Smith (daughter of Harry J. Smith, Jr.) on Map 3, Lot 1 of the Town of Meddybemps property map, as well as the warranty deed filed in the Washington County (Maine) Registry of Deeds under Book 1743, Pages 225-227.

   h. "Original Smith Junkyard" means the parcel of land, approximately forty-two acres in extent, located on the South Side of Route 191 in the Town of Meddybemps, Washington County, Maine, which is identified as Lot 2 on Map 3 of the Town of Meddybemps property maps, as well as in the warranty deed to Harry J. Smith, Jr., dated April 7, 1986, which deed is filed in the Washington County (Maine) Registry of Deeds at Book 138, Page 022.

   i. "Remedial Investigation" or "RI" means a process undertaken by the lead agency (in this case, the Plaintiffs) to determine the nature and extent of the problem presented by the release. The RI emphasizes data collection and site characterization, and is generally performed prior to a feasibility study. The RI includes sampling and monitoring, as necessary, and includes the gathering of sufficient information to determine the necessity for remedial action and to support the evaluation of remedial alternatives. The RI that is planned for the Site is more particularly described in the Scope of Work that is attached hereto as Exhibit A.

   j. "Residential Property" means the house, grounds and all outbuildings, conveyances, vessels and containers of all descriptions that are located on the premises formerly

5

owned by Charlotte Smith, mother of Harry Smith, Jr., and now owned by Dawn Smith, daughter of Harry Smith, Jr., at 881 Main Street in the Town of Meddybemps, Washington County, Maine.

      k.    "RI/FS Costs" means all costs, not inconsistent with the NCP, that have been or will be incurred by the Plaintiffs in performing and completing the Remedial Investigation and Feasibility Study at the Site pursuant to 40 C.F.R. § 300.415. These costs may include, but are not limited to, staff time and overhead costs incurred by the Maine Department of Environmental Protection related to the performance and completion of the Remedial Investigation and Feasibility Study, as well as costs incurred by independent contractors retained by the Maine Department of Environmental Protection to perform and complete the Remedial Investigation and Feasibility Study, as well as the costs of installing monitoring wells that monitor or test for contamination at the Site or off-Site contamination that may be emanating from the Site, obtaining samples from those wells, and conducting laboratory analyses of such samples.

      l.    "Removal Action" means the initial site inspection and evaluation conducted by the Plaintiffs at the Residential Property, and the overpacking, staging and removal of hazardous substances by the Plaintiffs from the Residential Property. "Removal Action" also means the installation, operation, and monitoring of air monitoring equipment and groundwater monitoring wells at the Residential Property prior to June 30, 2006. The Removal Action does not include any additional response actions that may be undertaken at the Residential Property, including, but not limited to: conducting or overseeing a remedial investigation; conducting or overseeing a feasibility study; selecting a remedial action; implementing the remedial action; operating and maintaining the remedy; and long-term monitoring.

    m. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

    n. "The Site" means, collectively, the Original Smith Junkyard, the North Annex to the Smith Junkyard, the West Annex to the Smith Junkyard, and the Homestead Site.

    o. "United States" means the United States of America, including all of its departments, agencies, and instrumentalities.

    p. "West Annex to the Smith Junkyard" means the parcel of land, approximately 49 acres in extent, located on the north side of State Route 191, approximately one quarter mile west of the Original Smith Junkyard on State Route 191, immediately west of the Cooper/Meddybemps Town line, and described in a warranty deed to Gregory Smith and Dawn Smith (Harry J. Smith, Jr.'s son and daughter) as recorded in the Washington County (Maine) Registry of Deeds at Book 2121, Page 152.

 4. <u>Payment</u>.

    a. As soon as reasonably practicable after the Effective Date of this Decree, the United States shall pay $712,621.94 to the Plaintiffs. Said payment shall be made by electronic funds transfer according to payment instructions provided by the Plaintiffs.

    b. In the event that payment required by Paragraph 4.a. of this Decree is not made in full within one hundred twenty (120) days after the Effective Date of this Consent Decree, then interest on the unpaid balance shall be paid at the rate specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26 of the United States Code, with the accrual of interest commencing on the one hundred twenty-first (121st) day after the Effective Date of this Decree, and continuing through the date the payment is made by the United States as prescribed in Paragraph 4.a. of this Decree.

    c. All payments by the United States are subject to the availability of funds appropriated for such purpose.  No provision of this Decree shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

    5. <u>Covenants By Plaintiffs</u>.  Upon entry of this Decree by the Court, Plaintiffs hereby forever covenant and agree not to assert (by way of the commencement of an action, the joinder of the United States in an existing action or in any other fashion) any and all claims, causes of action, suits or demands of any kind whatsoever in law or in equity which they may have had, or hereafter have, including, but not limited to, claims under CERCLA Sections 107 and 113, and 38 M.R.S.A. §§ 1304(12), 1365 and 1367, against the United States for Covered Matters.

    6. <u>Reservations of Rights By the Plaintiffs</u>.  The Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights against the United States with respect to all matters not expressly included within the Covenants By Plaintiffs in Paragraph 5, including, but not limited to:

    a. liability for failure of the United States to meet a requirement of this Consent Decree;

    b. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

    c. criminal liability;

    d. liability from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant at or outside of the Site or Residential Property, except as provided in this Consent Decree, including but not limited to

claims for Future Response Costs and claims for administrative or judicial relief related to such releases.

The United States reserves any and all defenses it may have regarding such claims or actions.

7.  Reservations of Claims Against Third Parties.  Nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which either the Plaintiffs or the United States may have against any person, firm, corporation or other entity not a signatory to this Consent Decree.

8.  Protection Against Claims.

a.  The Parties acknowledge and agree that the payments to be made by the United States pursuant to this Decree represents a good faith compromise of disputed claims and that the compromise represents a fair, reasonable, and equitable discharge for Covered Matters. With regard to any claims for costs, damages or other claims against the United States for Covered Matters, the Parties agree that the United States is entitled to, as of the effective date of this Decree, contribution protection pursuant to section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the United States' liability to persons not party to this Decree. Any rights the United States may have to obtain contribution or otherwise recover costs or damages from persons not party to this Decree are preserved.

b.  The Parties agree to join in and/or support, as may be appropriate, and where it will not affect the sovereign immunity of either party, such legal proceedings as necessary to secure the Court's approval and entry of this Decree and to secure and maintain the

contribution protection contemplated in this Decree.

9. <u>Effect of Settlement/Entry of Judgment</u>.  This Decree was negotiated and executed by Plaintiffs and the United States in good faith and at arms length and is a fair and equitable compromise of claims.  Nothing in this Decree shall constitute or be construed as an admission of any issue of fact or law by the United States.  Nor shall this Decree constitute or be construed as an admission or denial of any factual allegations set out in the Complaint.  Nor shall this Decree constitute or be construed as an admission of violation of any law, rule, regulation, or policy by any of the Parties to this Decree.

10. <u>Entire Agreement</u>.  Upon approval and entry of this Decree by the Court, this Decree shall constitute a final judgment between and among the Parties with respect to Covered Matters.  The Parties acknowledge that there are no representations, agreements, or understandings relating to this Consent Decree other than those expressly contained in this Consent Decree.

11. <u>Dismissal Without Prejudice of Complaint</u>.  Upon approval of this Decree, all claims against the United States in this Action shall be dismissed without prejudice.

12. <u>Incorporation of Appendix A</u>.  This Consent Decree fully incorporates and includes Appendix A, which is attached hereto and entitled "Scope of Work to Conduct a Remedial Investigation At the Smith Junkyard Uncontrolled Hazardous Substance Site, Meddybemps, Maine."

13. <u>Representative Authority</u>.  The individuals signing this Decree on behalf of the Plaintiffs and the United States hereby certify that each is authorized to bind legally his or her respective party to this Decree.

14. <u>Costs of Litigation</u>.  Plaintiffs and the United States shall each bear their own costs and expenses, including attorneys' fees, in this case.

UPON CONSIDERATION OF THE FOREGOING, and for good cause shown, the Court hereby finds that this Decree is fair and reasonable, both procedurally and substantively, consistent with applicable law, in good faith, and in the public interest. Accordingly, the foregoing Consent Decree is hereby APPROVED.

There being no just reason for delay, this Court expressly directs ENTRY OF FINAL JUDGMENT in accordance with the terms of this Decree.

SO ORDERED, this 6th day of January, 2006.

        /s/John A. Woodcock, Jr.
        John A. Woodcock, Jr.
        United States District Judge

**CONSENTED TO:**

**For Plaintiffs State of Maine and Maine Department of Environmental Protection:**

Date: December 9, 2005        /s/ Dennis J. Harnish
        Dennis J. Harnish
        Assistant Attorney General
        Office of the Attorney General
        6 State House Station
        Augusta, Maine 04333-0006
        (207) 626-8800

**For Defendants United States of America and United States Department of Defense:**

                                    SUE ELLEN WOOLDRIDGE
                                    Assistant Attorney General
                                    Environment and Natural Resources Division

Date: December 22, 2005          /s/ Stephen E. Crowley
                                      Stephen E. Crowley
                                      United States Department of Justice
                                      Environment & Natural Resources Division
                                      Environmental Defense Section
                                      P.O. Box 23986
                                      Washington D.C.  20026-3986
                                      (202) 514-0165